0717305. Counsel you may proceed. Thank you. Good morning, your honors. May it please the court, counsel. I'm Tom Stieber on behalf of Robert E. Bowles, who's the claimant in this case. We've filed this appeal asking this court to reinstate the decision of the arbitrator who found that Mr. Newbold sustained an accidental injury on July 20th of 2012. And that his injury was causally related to his activities at work on that day. Um, to me, this was a very confusing decision from the commission. The evidence was overwhelming in establishing that Mr. Newbold left for work on the morning of July 20th, 2012, feeling fine and was overwhelming and demonstrating that when he arrived back from work that day, he was complaining of an injury. The only testimony that was submitted to the arbitrator on this issue came from Mr. Newbold, and then also a yard supervisor, Patrick Cleason, who was an employee of the respondent, who testified that when Mr. Cleason arrived back from work that day, he was complaining of an injury. And so the evidence demonstrates that on July 20th of 2012, something happened to Mr. Newbold. Now, Mr. Newbold's testified without anyone disputing his testimony that he works as a driver, he drives a truck delivering plants for a commercial nursery, and that on this particular day, he was assigned the task of making a number of deliveries, the farthest one out of the state of Wisconsin. By the time he arrived at his first destination, he said he felt some pain in his back. The truck that he drives has a very rough suspension with a hard seat. And he said that he began his deliveries to the customer, which involved loading or unloading plants and loading them back onto his truck, which involved bending and lifting and some climbing, pushing and pulling. And then he was back in. Could I interrupt you just a moment? Sure. And just because I think the record is clear, and I think you acknowledge this, that your client gave several different versions of the history of the accident, what caused him to be injured that day. He really didn't, when you look at the records, he can't be injured. Okay. In your brief, though, and you started your argument here in this way, that it seems to be that he went to work healthy, he came back home injured, and during the course of the day, something happened. And the record has these different versions of what happened, that he was pulling a cart, that he slipped off of a lift gate or sidestep. But the truck, or that he was pushing or pulling a cart, but, and this is what you say in your brief, regardless of which one of those incidents it was, they all involved a work accident, and therefore your client is entitled to compensation. On the issue of accident, every single one of those events would constitute an accident for which compensation would be payable. And that's where I'm troubled by the decision is, I don't really have a good analogy, but I was thinking of a football game where you'd have a player who runs the ball in for a touchdown, and on review, they see that his knee was down and he was out of bounds. But it's, so it's, according to you, it's not up to the claimant to establish, to prove a specific incident caused his injury. He can just throw out there, this did it, or this did it, or this did it. And as long as that's in there, there's no contrary evidence in regards to a different non-work related cause, that the commission must find an accident. Well, and I think, I'm not saying that exactly, but what I'm saying is that the evidence shows that he clearly engaged in all of those activities. He has his own opinion regarding what may have caused the injury. He thought it was bouncing up and down on the seat of his truck. But, you know, the petitioner in this case is not permitted to provide a causal connection opinion. We need to establish that and support that through medical testimony. And the doctor, the only doctor that was asked to provide an opinion, felt that it was more likely as a result of this other activity that he was engaging in. And so, you know, when you look at what the petitioner testified as to what he was doing, that's undisputed. There's no, there's no contrary evidence. Is there any evidence of a pre-existing lumbar spine and back problem? There was one mention in the emergency rooms of records of Del Nor Community Hospital that in October of the previous year, he had struck his back with a door, but there was no treatment. And so, you know, that was volunteered by Mr. Newbolts in the emergency room. But no, there is no evidence of a pre-existing injury. So you're saying that parts and buckets of your case, that there was a work related injury? Absolutely, absolutely. And if the commission found your client not credible, given all of the competing versions, wasn't that their prerogative? Well, I don't think that the commission can simply and arbitrarily say that's not credible when you look at, okay, what's not credible? That he wasn't driving a truck with a hard suspension? That he wasn't pushing and pulling? His assertion that he was injured after each of these particular work related incidents that you're referring to, the bouncing the seat, the stepping or falling off of the lift gate. Well, his testimony was that he was injured after doing all of those things. You know, that his pain progressed throughout the day. I think the trouble that the commission has and the confusion that resulted in this case is they're really confusing causal connection with accident. And what the commission is saying is, look, your doctor says it came from loading, you know, the pushing and pulling of these plants off the truck. And your client, when he gives a statement to the insurance carrier and the insurance carrier doesn't say, tell me what you were doing that day that caused you pain or what you were doing when your pain arose. They ask him the question, what do you think caused your pain? He says, well, I think it was the suspension. He's offering his opinion, which is not illicit, you know, it doesn't count. If I could prove my case based on his opinion, I would be arguing that it was the truck. Because that's what's consistent, you know, that's the most consistent thing. But his testimony, which was not contradicted, which the petitioner or the respondent, you know, I don't think has any disagreement that he's engaged in these activities. And the commission doesn't disagree that he's engaged in these activities. And you have a situation where you have a person who comes back from work with a complaint. Now, the only witness that offers any sort of argument to the petitioner's position is this Patrick Gleason, who also acknowledges that he saw him on Friday. There was a dispute as to whether or not they saw each other on the date of the accident. But Mr. Gleason says, I saw him and he complained of an injury. I looked at him, I didn't think he was hurt. Mr. Gleason also says he saw him the following Monday, which is the day that my client went to the hospital complaining of 9 out of 10 pain, was given Tramadol, morphine, all kinds of painkillers, was diagnosed with radiculopathy. And Patrick Gleason says on that day I saw him, he didn't look hurt at all. There's nothing wrong with him. That's the day he went to the hospital. So did your client indicate that his last day at work was July the 25th of 2012? He did. And I think, you know, we're trying this case, and I would ask the court to consider this, is we're trying this case several years after that happened. And I think there was some confusion on those dates. Well, just to follow up here, it was established through his time cards that he subsequently worked on July 26th, 27th, and 30th, right? I think that the court could find that. I don't know if it was established by that, but I think the court could conclude that from the time cards, and that would be a reasonable conclusion from that evidence. Did your client deny, even at arbitration, that he worked those three days after they could find it in the time cards? I don't think that he did. I don't think that he did. I would tell you that the petitioner is a fairly simple man with a very limited education, and the arbitrator noted in her findings that he had difficulty articulating the circumstances. And she took that into consideration. She weighed the credibility of the witnesses and found that he was credible. The commission, you know, made this determination of credibility, but what is it based on? You know, he testified that he did all of these things, and he did all of those things. The commission is in finding that he didn't do those things. That's what's troubling about the decision. I think, you know, what seems clear from their decision is that they found that he gave conflicting mechanisms of injury as the, what happened that particular day. And the application for adjustment of claim, the amended application, and correct me if I'm wrong, he lists as mechanisms of injury, fell out of truck, pulling heavy loads, and rough truck ride. And all of those things, those are all things that he did. Those are all things that would constitute an accident, and none of that is inconsistent because he did that throughout the course of his entire workday. I mean, if he did do those things, and they could show, look, he never engaged in these activities, that's inconsistent. But to say, I did all of these things, and then say, well, you know, how are we supposed to know which one caused this accident? All of those are accidents. I mean, they're, the commission is taking causal connection and muddling it with accident. When you get to the question of causal connection, there's only one opinion that was offered and was unchallenged, and that was Dr. Ross. And Dr. Ross says, I think this man's condition is related to those activities, but I think it's the pushing and pulling, not the truck. Dr. Ross said it was due to lifting. Or loading. He said loading. Lift by truck? He said loading. Loading of the truck, but in loading. Which he didn't do. He did. He did do those things.  He did do it, not loading. He loaded the truck? He actually did load the truck. He loads the truck all the time. He did not load it in the morning. The truck was loaded when he arrived, but it's his duty to load the truck. He also, loading and unloading require the same activities. They require pushing and pulling. They require lifting. You're putting plants on, you're taking plants off. I would argue to the court that there's no meaningful distinction between, you know, whether you're loading or unloading the same items off of the truck. Dr. Ross felt that this condition was most likely related to that activity, not the driving. And his opinion was based on a reasonable degree of medical and surgical certainty, which, you know, the respondent argues that it wasn't, but it's clearly in his record. I don't know where that comes from. The commission also said that they did not accept Dr. Ross's opinion because they felt that Dr. Ross did not review certain records, but there's no evidence of that. In fact, I think if you were to make any sort of inference from the record in this case, you would have to infer that Dr. Ross, in fact, did review these Tri-City health records, which is a free clinic, because he references treatment that was received by Mr. Newholtz that was only contained in those records. There are certain arguments made by the respondent in this case that were adopted by the commission. And there's just no basis in the record to support those conclusions. And one is that Dr. Ross did not base his opinion on a reasonable degree of medical and surgical certainty. He says it right in his report. The other is that he didn't review these records. But he offers an opinion, and he's the only doctor, that's the only evidence. And when that's the only evidence in the case regarding causation, how do you find that there's not causation? Because he attributed it to an activity the claimant didn't do. I mean, I'm just quoting from his report. Dr. Ross, although there was no actual work accident, it is more likely than not that the lifting activities at work on July 20th, 2012, were the approximate cause of patient's symptoms and his need for treatment. But if you look at the petitioner's testimony about what he did, he describes his, I mean, he's a driver. He's a delivery driver. He takes plants, which he described in the record as, you know, carts of plants that have, each cart has four racks. And on each rack are these four different containers of plants weighing 20 to 25 pounds. The carts weigh anywhere from 600 pounds to slightly higher than 600 pounds when they're full. When he arrived at his first destination, he pulled one of the carts off to deliver it to his customer. And he proceeded that way until he got beat in his truck. So, I mean, you know, I guess if the question is, did he engage in lifting? That's the testimony. I mean, how do you decide that he didn't? What is the basis to conclude that he didn't engage in that activity? Counselor, your time is up. You have time in the room. Thank you. May I respond? Good morning, Your Honor. It's Daniel Sarger from the Respondent. What's clear in this case is the commission reviewed the evidence, reviewed the testimony of Mr. Newbold's, made a determination that it simply was not credible. That's a finding of fact well within the province of the commission. It's their duty to weigh the evidence, make these findings a fact. It's not even as if it's a case where you need to imply whether or not they did or did not find it. They explicitly found him not credible. What did they find him not credible at? Well, it's based upon the fact that his statements at different points in time change as to what happened and how this occurred. If you look at what he initially spoke with Mr. Cleason, if you hardly believe that that conversation occurred, he says he hurt his leg. He didn't say he hurt his back. He says he banged his leg into the side of his truck. Then when he talks to the insurance company about the claim, they ask him, why do you think this is work-related? He says it's the suspension of the truck. In other sense, he felt any pain from lifting or pulling carts the way he testified at trial. He said he testified at trial and started pulling a cart and he started having pain in his back. And that these lifting activities may have increased his pain. There's no real evidence that he was lifting these plants. I'll concede for these purposes, he may have had to take them off the racks. But even then, what is it about that that caused it? If you were having pain from lifting, you would notice that as you're lifting and moving things. If you're shoveling dirt, you notice pain in your back as you're doing it more and more. There's no evidence that that happens early on in the case. It's only after he retains counsel and goes and sees his IME doctor that there's any mention of this lifting causing pain. He tells the ER physician that he just noticed pain Friday at work. Doesn't say how it happened. Doesn't say I was lifting and pulling carts. It says I noticed pain Friday at work. How is the commission supposed to rely upon that to find it's work related? It's the testimony morphs and changes. It keeps evolving over time. And even then there's further inconsistencies with his testimony. He originally testified the last day he worked was July 23rd. During the course of trial, he switched it to July 25th. He was presented with a time card showing that he worked until the 30th. He still denied it. He actually denied that he worked until the 30th. The arbitrator even agreed that he worked on the 30th. So all of these inconsistencies in his testimony gave them enough of a basis to show that he was not credible. Once again, it was his duty, his responsibility with this case to present by a probable evidence of the evidence that credible evidence exists to show that he suffered work-related injury on July 20th of 2012, which by the commission's decision and their factual findings, he'd failed to meet that standard. For that reason, the claim in itself should be denied. Then there's also these issues with Dr. Ross's reports. There's two reports Dr. Ross issued. The first report, he says more widely than not. He does not say that based upon a reasonable degree of medical and surgical certainty anywhere in that report. In the second report, he uses, quote unquote, the magical language, based upon a degree of medical and surgical certainty. However, in that second report, he also states, I believe it's after he goes through the review of some of the medical treatment records, he said, after discussing an August 28th, 2012 injection at Fox Valley Pain Management, he says, I was unable to find any record documenting his medical condition, referring to any further medical records after that August 28th. So it's very clear from his report that he did not review the Tri-City Health Records. Those Tri-City Health Records are replete with month-long gaps of no complaints of back pain, and then maybe a complaint of back pain here. There was a mention of him lifting a stove in July of 2013. He doesn't have any problems with his back after lifting a stove. He has chest pain. This is all to show that, at the very least, this causal connection between whatever was going on in the fall of 2012 was clearly severed by the point we got to trial in, what was it, I think it was 2015. So these reports and everything like that, and these records, and the records document that nothing is consistent with where he's going. And so the Commission looked at that, looked at Dr. Ross's report, and it was determined that, you know what? The first report should not be considered to be a no-lead, because it's not based upon the proper standard. The second report is given the proper standard, but it lacks the foundation necessary, and doesn't have all the information necessary to actually tie on this causal connection opinion. Therefore, we're giving that no weight. So to say there's no weight, to say that there's only one report, there's one report that has no value. So for those reasons, the causal connection was severed. But more importantly, it's simply the fact that there was no credible evidence presented to show what the true mechanism of injury was on July 20th of 2012. It was Mr. Meebles describing a work day and saying he was hurt afterwards. He never says anything specific. He never, he disalleges as many things as possible as to how he was hurt, why he was hurt, and then hopes that someone, one of those is good enough when we finally get to the trial. Thank you, Counsel. Counsel, you may reply. Just briefly, I would not say that Mr. Newbolt's statement ever really changed in this case. I mean, his testimony was that when he left for work, his pain developed as he was driving and became worse as the day progressed. When you look at the medical records, all of the medical records consistently demonstrate that his pain began on that day, July 20th of 2012. Every single record, Delnor, Dr. Scurlock, his primary care physician, Dr. Chang, the pain management physician, Dr. Ross, the IME, they all relate the onset of pain back to that day. He very clearly, I mean, the records, if you look at Delnor, if you look at Dr. Scurlock, those records are somewhat devoid of color in terms of a descriptive history. Dr. Chang's records, he does elaborate quite a bit. He talks about the driving. And then when Mr. Newbolt gives his statement to the insurance company, he also indicates the driving, but he's never asked about any of the other activities that he performed that day. It's only when he testifies that he talks about those things. But in his application, it's clear that he believes that there's a lot of activities that may have led to the development of this pain, and ultimately it's for a doctor to decide which one of those activities was the causative factor of his problem. And so you have evidence of activity, all of which would constitute an accident that would be compensatory. They all involve activities arising out of and in the course of his employment that poses some increased risk of harm. Let me ask you something just in the way of an example. You had a client that worked on the factory floor assembling widgets, and you had his testimony that he went to work pain-free, described what his job duties were that day, and that he came home with his back hurting and subsequently was diagnosed as a lumbar herniation. Are you indicating that that would be sufficient evidence from which the commission would find accident proven? As long as there is also some evidence in terms of causation. But in terms of accident, if a doctor says that activity that he was engaging in could have produced this condition on that day and says based on those facts, I think that's what happened. But proof of accident, you're saying that would be sufficient proof of accident? Yes, he says that his pain arose while he was engaging in those activities throughout the course of the day. I think that's enough because I think the courts have said that an accident is proven when a person demonstrates that his physical structure is changed under the force or duress of his labor associated with his employment. So, you know, I think that clearly Mr. Newbold's situation in your hypothetical clearly satisfied that definition. The other thing I just want to address in my rebuttal was that the commission in addressing Dr. Ross's opinion rejects his opinion for two reasons. One, they say it was not based on a reasonable degree of medical and surgical certainty. I mean, you can read for yourself. The second is that they say he never considered these other records. But, you know, the respondent never chose to depose Dr. Ross. They never challenged the report itself. So as I review the records that were submitted to me, there's no evidence that he failed to consider those records. And, you know, I think it's just rank speculation to come to the conclusion that he did consider those records and that somehow would have changed his opinion. That is the only opinion. That was the only evidence. And to reject the causal connection, you know, on the fact that they're rejecting his opinions for those reasons, I think it has to be overturned. Thank you. Thank you, Counsel Bulls. This matter was taken at advisement. Written disposition shall issue.